O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EDWARD LUNA,                          ) Case No. EDCV 12-1251-JPR
                                      )
                Plaintiff,            )
                                      )
           vs.                        ) MEMORANDUM OPINION AND ORDER
                                      ) AFFIRMING THE COMMISSIONER
                                      )
CAROLYN W. COLVIN,                    )
Acting Commissioner of                )
Social Security,[1]                   )
                                      )
                Defendant.            )
                                      )
_____

I.    PROCEEDINGS

     Plaintiff seeks review of the Commissioner's final decision
denying his applications for Social Security disability insurance
benefits ("DIB") and Supplemental Security Income benefits
("SSI").  The parties consented to the jurisdiction of the
undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).
This matter is before the Court on the parties' Joint
Stipulation, filed March 18, 2013, which the Court has taken

_____

     [1]    On February 14, 2013, Colvin became the Acting
Commissioner of Social Security.  Pursuant to Federal Rule of
Civil Procedure 25(d), the Court therefore substitutes Colvin for
Michael J. Astrue as the proper Respondent.

under submission without oral argument.  For the reasons stated below, the Commissioner's decision is affirmed and this action is dismissed.

**II.  BACKGROUND**

Plaintiff was born on February 5, 1970.  (Administrative Record ("AR") 99, 105.)  He completed the 12th grade and "speaks English well."  (AR 138, 221.)  Plaintiff previously worked as a warehouse worker and a home attendant.  (AR 148-51, 197.)

On December 29, 2009, Plaintiff filed applications for DIB and SSI.  (AR 105, 117.)  He alleged that he had been unable to work since March 13, 2008, because of a curved spine and two "popped" discs in his lower back that happened when he was lifting a heavy truck tire.  (AR 55, 229.)  His applications were denied initially, on March 4, 2010 (AR 55-59), and upon reconsideration, on August 19 (AR 61-65).

After Plaintiff's applications were denied, he requested a hearing before an Administrative Law Judge ("ALJ").  (AR 66.)  A hearing was held on January 25, 2011, at which Plaintiff appeared without counsel and testified on his own behalf; a vocational expert ("VE") and Plaintiff's mother also testified.  (AR 29.)  In a written decision issued March 9, 2011, the ALJ determined that Plaintiff was not disabled.  (AR 14-23.)  On May 30, 2012, the Appeals Council denied Plaintiff's request for review.  (AR 1-4.)  This action followed.

**III. STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and

2

supported by substantial evidence based on the record as a whole. Id.; Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance.  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months.   42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R.

3

§§ 404.1520(a)(4), 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied.  §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied.  §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform his past work; if so, the claimant is not disabled and the claim must be denied.  §§ 404.1520(a)(4)(iv),

---

[2]    RFC is what a claimant can do despite existing exertional and nonexertional limitations.  20 C.F.R. §§ 404.1545, 416.945; <u>see</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1   416.920(a)(4)(iv).  The claimant has the burden of proving that

2   he is unable to perform past relevant work.  Drouin, 966 F.2d at

3   1257.  If the claimant meets that burden, a prima facie case of

4   disability is established.  Id.  If that happens or if the

5   claimant has no past relevant work, the Commissioner then bears

6   the burden of establishing that the claimant is not disabled

7   because he can perform other substantial gainful work available

8   in the national economy.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

9   That determination comprises the fifth and final step in the

10  sequential analysis.  §§ 404.1520, 416.920; Lester, 81 F.3d at

11  828 n.5; Drouin, 966 F.2d at 1257.

12       B.   The ALJ's Application of the Five-Step Process

13       At step one, the ALJ found that Plaintiff had not engaged in

14  any substantial gainful activity since March 13, 2008.  (AR 16.)

15  At step two, the ALJ concluded that Plaintiff had the severe

16  impairment of "degenerative disc disease of the lumbar spine."

17  (Id.)  At step three, the ALJ determined that Plaintiff's

18  impairment did not meet or equal any of the impairments in the

19  Listing.  (AR 18.)  At step four, the ALJ found that Plaintiff

20  retained the RFC to perform light work,[3] subject to certain

21  _____

22       [3]   "Light work" is defined as involving "lifting no more
    than 20 pounds at a time with frequent lifting or carrying of
23  objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b),
    416.967(b).  The regulations further specify that "[e]ven though
24  the weight lifted may be very little, a job is in this category
    when it requires a good deal of walking or standing, or when it
25  involves sitting most of the time with some pushing and pulling
    of arm or leg controls."  Id.  A person capable of light work is
26  also capable of "sedentary work," which involves lifting "no more
    than 10 pounds at a time and occasionally lifting or carrying
27  [small articles]" and may involve occasional walking or standing.
    §§ 404.1567(a)-(b), 416.967(a)-(b).
28

limitations:

> [P]ostural limitations (i.e., climbing ramps/stairs,
> balancing, stooping, kneeling, crouching and crawling)
> can be done on an occasional basis.  The claimant cannot
> climb ladders, ropes or scaffolds.  He cannot work at
> unprotected heights or around dangerous machinery. . . .
> Out of an 8-hour period, with normal breaks, the claimant
> can stand and/or walk for 6 hours and sit for 6 hours.

(Id.)  Based on the VE's testimony, the ALJ concluded that
Plaintiff was unable to perform any past relevant work.  (AR 21.)
At step five, the ALJ concluded that Plaintiff was not disabled
under the framework of the Medical-Vocational Guidelines, 20
C.F.R. Part 404, Subpart P, Appendix 2, and that jobs existed in
significant numbers in the national economy that Plaintiff could
perform.  (AR 22.)  Based on the VE's testimony, the ALJ found
that Plaintiff could perform such jobs as assembler of small
products I (DOT 706.684-022, 1991 WL 679050), information clerk
(DOT 237.367-018, 1991 WL 672187), and inspector/hand packager
(DOT 559.687-074, 1991 WL 683797).  (Id.)  Accordingly, the ALJ
determined that Plaintiff was not disabled.  (AR 23.)

**V. RELEVANT FACTS**

On March 13, 2008, Plaintiff injured his back while working
as a warehouse assistant.  (AR 212.)  He stated that while trying
to lift a heavy tire, "he heard a pop in his back," fell to the
ground, and could not stand up unassisted.  (Id.)  Plaintiff went
to Corona Regional Medical Center the same day, where an MRI was
taken that revealed a "broad-based posterior disc herniation at
L4-5 extending approximately 4-5 mm posteriorly and causing

moderate canal stenosis." (AR 276-77.) Plaintiff received an injection for pain and was advised that surgery was an option but that because he was young, he would heal without surgery. (AR 204.) A second MRI was taken in June 2008, which showed a "4 mm central disc protrusion with mild spondylosis." (AR 218.)

On August 6, 2008, Plaintiff was evaluated by Dr. Hamid Rahman, who noted that "[Plaintiff] ambulate[d] with aid of cane" and "state[d] that any activity cause[d] pain in the low back." (AR 204.) Plaintiff exhibited a positive straight-leg-raising test in the supine position. (AR 208.) Dr. Rahman found "[p]alpable 2+ tenderness . . . present over paraspinous muscles of the low back, with evidence of 3+ paravertebral muscle spasm" and "palpable tenderness . . . over the L5-S1 vertebra." (Id.) Plaintiff was diagnosed with "musculoligamentous strain/sprain lumbar spine," "left lower extremity radiculitis," and "herniated nucleus pulposus, 4 mm disc at L4-5." (AR 209.) Dr. Rahman recommended pain medication, the use of a lumbosacral corset, an IF unit, a consultation for epidural injections, and possible surgery. (AR 209-10.)

On September 5, 2008, Dr. Ronald Schilling declared Plaintiff "permanent and stationary"[4] in connection with a workers' compensation evaluation. (AR 255.) On September 18, 2008, Plaintiff was reevaluated by Dr. Rahman, who found that Plaintiff exhibited loss of flexion at 15-20 degrees and

---

[4] "Permanent and stationary" means that his "medical condition [had] reached the maximum medical improvement and [was] unlikely to change." Hernandez v. Colvin, No. CV 12-3320-SP, 2013 WL 1245978, at *9 n.8 (C.D. Cal. Mar. 25, 2013) (citing 8 Cal. Code Regs. § 10152).

1    extension of 10 degrees, tenderness of the L4-5 interspace,
2    decreased sensation, and spasm over the paravertebral muscles.
3    (AR 201.)   Although Dr. Rahman offered epidural injections to
4    treat Plaintiff's pain, Plaintiff declined.   (Id.)   Dr. Rahman
5    instead prescribed a muscle relaxant.   (AR 201-02.)   Dr. Rahman
6    found Plaintiff "temporarily totally disabled" and referred
7    Plaintiff to Dr. Richard L. Mulvania for surgical consultation.
8    (AR 202.)

9        On September 29, 2008, Plaintiff was examined by Dr.
10   Mulvania, who noted that Plaintiff exhibited "loss of the normal
11   sagittal balance," "spinous process tenderness," and "moderate
12   paraspinal muscle guarding."   (AR 216.)   Dr. Mulvania diagnosed
13   Plaintiff with "[h]erniated nucleus pulposis L4-5 with
14   radiculopathy to left lower extremity" and recommended "facet
15   blocks at the L4-5 level" and "conservative care as directed by
16   his primary treating physician."   (AR 218-19.)

17       More than a year later, on February 24, 2010, Plaintiff was
18   examined by consultative examiner Dr. Bunsri T. Sophon.   (AR 229-
19   33.)   After performing a complete orthopedic examination but
20   without reviewing the medical record, Dr. Sophon found that
21   Plaintiff's cervical spine "reveal[ed] normal curvature, no
22   deformity or asymmetry," and that Plaintiff's thoracic and lumbar
23   spine "reveal[ed] no evidence of tenderness or muscle spasm."
24   (AR 231.)   Plaintiff also exhibited negative straight-leg raising
25   both sitting and supine.   (Id.)   Although Plaintiff demonstrated
26   "diminished sensation in the entire left lower extremity," his
27   lower body showed range of motion "within normal limits," with
28   "no evidence of muscle atrophy or spasm."   (AR 232.)   Dr. Sophon

noted:

> [Plaintiff] was constantly moaning and groaning, stating
> aggravation of pain in the low back in every movement of
> his body, especially when he was taking his coat off for
> the examination.  He was noted not to demonstrate any
> symptoms of pain when he walked out of the examining
> room.

(AR 231.)  Although Plaintiff brought a cane to the examination,
he "demonstrated a normal gait without using the cane."  (Id.)
Dr. Sophon opined that Plaintiff was "capable of lifting and
carrying 50 pounds occasionally, 25 pounds frequently," but could
only sit, stand, or walk six hours each in an eight-hour workday.
(AR 233.)

On March 2, 2010, upon reviewing Plaintiff's medical
records, consulting physician Dr. M. Ormsby agreed with Dr.
Sophon that Plaintiff retained the RFC to do medium work "[with]
postural limitation to accommodate obesity and decreased
sensation LLE."  (AR 248.)

On March 4, 2010, Plaintiff was again evaluated by Dr.
Schilling for an "updated permanent and stationary evaluation."
(AR 254-67.)  Although Dr. Schilling found Plaintiff to have a
"50% whole person impairment" (AR 266), he also noted that
Plaintiff should be eligible for "vocational rehabilitation" if
he was "unable to find modified or alternative work within the
recommended work restrictions" (AR 262).

On August 10, 2010, upon reviewing Plaintiff's medical
records and speaking with Plaintiff and Dr. Schilling, consulting
physician Dr. S. Brodsky concluded that Plaintiff retained the

9

1  RFC to perform light work with postural and environmental

2  limitations.  (AR 273-75.)

3  **VI.  DISCUSSION**

4       Plaintiff alleges that the ALJ did not properly consider and

5  develop the medical evidence in the record and that the ALJ

6  improperly rejected Plaintiff's subjective symptom testimony.

7       A.   The ALJ Properly Developed the Medical Record

8       Plaintiff claims that the ALJ erred in (1) failing to obtain

9  Plaintiff's "permanent and stationary" report, dated September 5,

10  2008; (2) disregarding Dr. Schilling's "updated permanent and

11  stationary evaluation," dated March 4, 2010; and (3) adopting Dr.

12  Sophon's conclusions.  (J. Stip. at 4-5, 19.)

13            1.   The ALJ did not err in failing to obtain the

14                 September 5, 2008 permanent and stationary report

15       Plaintiff contends that the ALJ failed to properly develop

16  the record by not obtaining a workers' compensation permanent-

17  and-stationary report briefly mentioned in the Administrative

18  Record.  (J. Stip. at 4.)  Remand is not warranted on that basis,

19  however, because the record was sufficiently unambiguous and

20  complete to allow for proper evaluation of the evidence, and the

21  lack of the report did not create a "gap" in the medical record.

22  See Widmark v. Barnhart, 454 F.3d 1063, 1069 (9th Cir. 2006).

23                 a.   *Applicable law*

24       In determining disability, the ALJ "must develop the record

25  and interpret the medical evidence."  Howard v. Barnhart, 341

26  F.3d 1006, 1012 (9th Cir. 2003).  The ALJ's duty to develop the

27  record is heightened when a claimant is not represented by

28  counsel.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir.

1   2001).   Nonetheless, it remains Plaintiff's burden to produce
2   evidence in support of his disability claims.   See Mayes v.
3   Massanari, 276 F.3d 453, 459 (9th Cir. 2001).   Moreover, the
4   ALJ's duty to develop the record is triggered only when there is
5   "ambiguous evidence or when the record is inadequate to allow for
6   proper evaluation of the evidence."   Id. at 459-60.   It is the
7   plaintiff's duty to prove that he is disabled.   Id. at 459; see
8   also 20 C.F.R. §§ 404.1512(c) ("You must provide medical evidence
9   showing that you have an impairment(s) and how severe it is
10  during the time you say that you are disabled."), 416.912(c)
11  (same).

12                b.   *Analysis*

13      The ALJ did not err in failing to obtain the September 5,
14  2008 report because the medical evidence documenting Plaintiff's
15  condition during the Fall 2008 period was clear.   The record was
16  therefore sufficient for the ALJ to make a proper evaluation.
17  Moreover, the ALJ did have and reviewed the more recent 2010
18  permanent-and-stationary report.

19      Drs. Rahman's and Mulvania's examination notes dated August
20  6, September 18, and September 29, 2008, show that Plaintiff
21  exhibited tenderness of the spine (AR 201, 208, 216), complained
22  of severe back pain (AR 201, 204, 214), and used a cane (AR 201,
23  204, 216); both physicians diagnosed Plaintiff as having
24  "herniated nucleus pulposus" at L4-5 (AR 209, 218).   Dr. Rahman
25  found that Plaintiff exhibited marked loss of flexion and
26  extension, tenderness, spasm, a positive straight-leg-raising
27  test, and motor weakness.   (AR 201, 208.)   Dr. Mulvania's
28  examination notes confirmed these findings.   (AR 211-20.)

                                    11

Additionally, although the ALJ did not have access to Plaintiff's September 5, 2008 permanent-and-stationary report, he evaluated Plaintiff's "updated permanent and stationary evaluation," dated March 4, 2010 (AR 254-67), which briefly summarized the September 2008 report (AR 255) and which apparently contained similar conclusions.  Plaintiff does not specify what additional limitations the September 5, 2008 report would have supported that were not accounted for in the other evidence from Fall 2008 or the March 2010 updated report.

Moreover, despite Plaintiff's contention that the ALJ erred in failing to obtain the earlier report (J. Stip. at 9), Plaintiff still has not submitted the report to the Court, even after obtaining attorney representation.  Indeed, Plaintiff obtained counsel before appealing to the Appeals Council (AR 7-10), which could have considered additional evidence, see Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1233 (9th Cir. 2011) (quoting 20 C.F.R. § 404.970(b)), and yet did not submit the report to the Council.  Plaintiff's continuing failure to produce the September 2008 report undermines his contention that it is probative and contains important work limitations.[5]  In any event, Drs. Rahman's and Mulvania's consultation notes dated August 6, September 18, and September 29, 2008, are unambiguous and uncontradicted, and they thus provide sufficient information

---

[5]     Plaintiff argues that the ALJ's duty to develop the record was heightened because Plaintiff appeared at the hearing without counsel (J. Stip. at 5); this may be so, but because the record was not ambiguous and was sufficiently complete, the ALJ "fully and fairly develop[ed] the record."  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).

1   to have allowed the ALJ to accurately assess Plaintiff's
2   condition during the Fall 2008 period.  Any information in the
3   "missing" report likely would not have affected the ALJ's
4   analysis.  Thus, remand is not warranted on this basis.

5              2.   <u>The ALJ did not err in considering</u>
6                   <u>Plaintiff's treating physicians' opinions</u>

7        Plaintiff contends that the ALJ erred in (1) "completely
8   disregarding Dr. Schilling's 'updated permanent and stationary
9   evaluation'" (J. Stip. at 5) and (2) "fail[ing] to mention
10  treating evidence of record from . . . Dr. Rahman" (<u>id.</u> at 9).
11  To the extent the ALJ rejected Dr. Schilling's opinion, he
12  provided specific and legitimate reasons for doing so that were
13  supported by substantial evidence.  As to Plaintiff's second
14  claim, the ALJ extensively referenced Dr. Rahman's examinations
15  in his opinion and took Dr. Rahman's notes into consideration in
16  reaching his decision.

17                  a.   *Applicable law*

18       Three types of physicians may offer opinions in Social
19  security cases: (1) those who directly treated the Plaintiff
20  (treating physicians), (2) those who examined but did not treat
21  the Plaintiff (examining physicians), and (3) those who did not
22  directly treat or examine the Plaintiff (nonexamining
23  physicians).  <u>Lester</u>, 81 F.3d at 830.  A treating physician's
24  opinion is generally entitled to more weight than that of an
25  examining physician, and an examining physician's opinion is
26  generally entitled to more weight than that of a nonexamining
27  physician.  <u>Id.</u>  When a treating physician's opinion is not
28  contradicted by another physician, it may be rejected only for

                              13

1   "clear and convincing" reasons.  Carmickle v. Comm'r Soc. Sec.

2   Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81

3   F.3d at 830-31).  When a treating physician's opinion conflicts

4   with another doctor's, however, the ALJ must provide only

5   "specific and legitimate reasons" for discounting the treating

6   physician's opinion.  Id.  A treating physician is a claimaint's

7   own physician who has provided or continues to provide him with

8   medical treatment or evaluation in an ongoing treatment

9   relationship.  See Benton ex rel. Benton v. Barnhart, 331 F.3d

10  1030, 1035 (9th Cir. 2003); 20 C.F.R. §§ 404.1502, 416.902.  A

11  treatment relationship is considered "ongoing" "when the medical

12  evidence establishes that [the claimant] see[s], or [has] seen,

13  the source with a frequency consistent with accepted medical

14  practice for the type of treatment and/or evaluation required for

15  [his] medical condition(s)."  20 C.F.R. §§ 404.1502, 416.902.  If

16  a patient elicits the help of a physician for the sole purpose of

17  obtaining a report to support his disability claim, that

18  physician is not a treating physician.  Id.

19       In determining disability, the ALJ "must develop the record

20  and interpret the medical evidence" but need not discuss "every

21  piece of evidence in the record."  Howard, 341 F.3d at 1012.  The

22  ALJ is responsible for resolving conflicts in the medical

23  evidence.  Carmickle, 533 F.3d at 1164.

24       An ALJ may not disregard a physician's medical opinion

25  simply because it was initially procured in the context of a

26  state workers' compensation claim or framed in the terminology of

27  such proceedings.  Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105

28  (C.D. Cal. 2002).  "The ALJ must 'translate' terms of art

14

1   contained in such medical opinions into the corresponding Social

2   Security terminology in order to accurately assess the

3   implications of those opinions for the Social Security disability

4   determination." Id. at 1106.

5                    b.   *Discussion*

6       The ALJ gave limited weight to Dr. Schilling's "updated

7   permanent and stationary evaluation," which assessed Plaintiff's

8   impairments in terms of a "whole person" rating.   The ALJ noted:

9           The objective clinical and diagnostic evidence used by

10          [Plaintiff's] physician in his workers' compensation case

11          has been considered; however, the term "whole person"

12          impairment is a term of art used in workers' compensation

13          law that is not determinative under the criteria for a

14          finding of disability pursuant to the Social Security

15          Act.    The definition of disability in a workers'

16          compensation case is not the same as a Social Security

17          disability case.    Therefore, the conclusion by a

18          physician in terms of a "whole body" impairment rating .

19          . . is not relevant with regard to [Plaintiff's]

20          applications under the Social Security Act.

21  (AR 20-21.)  The ALJ gave "some weight" to the opinion of the

22  orthopedic examiner, Dr. Sophon, but gave the "greatest weight"

23  to the opinion of the state-agency reviewing physicians, Drs.

24  Ormsby and Brodsky, because they "are highly qualified physicians

25  and psychologists who are experts in the Social Security

26  disability programs, the rules in 20 C.F.R. 404.1527(f) and

27  416.927(f), and in the evaluation of the medical issues in

28  disability claims under the Act."  (AR 21.)  The ALJ ultimately

                              15

rejected Dr. Sophon's opinion that Plaintiff retained the RFC to perform medium work, finding that Plaintiff could perform only light work subject to certain limitations.  (AR 18.)

Dr. Schilling's opinion that Plaintiff suffered a "50% whole person impairment" was likely compatible with the ALJ's finding that Plaintiff retained the RFC to perform reduced light work. Plaintiff described his prior work as requiring him to repeatedly lift and carry tires weighing 50-150 pounds, with frequent bending, stooping, squatting, and kneeling.[6]  (AR 206, 212.) Even if he suffered from a "50% whole person impairment," that level of impairment was likely compatible with an RFC for reduced light work, which requires lifting only 10 pounds frequently and 20 pounds occasionally and only occasional postural movements. Moreover, Dr. Schilling found Plaintiff capable of work, stating that Plaintiff was eligible for vocational rehabilitation if he was unable to find modified or alternative work within his work restrictions.  (AR 266, 262.)  In any event, to the extent Dr. Schilling's opinion was incompatible with the ALJ's RFC assessment, the ALJ did not err in discounting it, and remand is not warranted.

As a preliminary matter, it appears from the record that Dr. Schilling does not qualify as a treating source under 20 C.F.R. §§ 404.1502 and 416.902.  The medical evidence shows that on May 22, 2008, Dr. Schilling examined Plaintiff and completed a "Physical Medicine and Rehabilitation Evaluation" and an

---

[6]    Plaintiff apparently claimed that the tire he was trying to lift when he injured himself weighed 250 pounds.  (AR 229.)

16

"Electro-Neurodiagnostic study." (AR 259.) Dr. Schilling then examined Plaintiff on October 5, 2008, when he declared him permanent and stationary for workers' compensation purposes. (AR 255.) Dr. Schilling apparently did not examine Plaintiff again, however, until March 4, 2010, when he completed Plaintiff's "updated permanent and stationary evaluation." (Id.) Although Plaintiff apparently claimed that he visited Dr. Schilling "once a month" (AR 37) and that Dr. Schilling prescribed all of his current medications (AR 193, 199), there is no objective evidence in the record that Plaintiff sought Dr. Schilling's help after May 2008 for any reason beyond the preparation of his disability reports. On the contrary, Dr. Schilling, in his March 2010 report, stated:

> [T]he patient may necessitate pharmaceutical agents to include, but not limited to, analgesics and NSAIDs. These medications would be prescribed by the medical physician. It is further my opinion that the issue of future medical care should be evaluated on an annual basis.

(AR 262.) This passage suggests that Plaintiff did not frequently visit Dr. Schilling for treatment but merely requested his assistance in preparing medical reports for his disability claims. Given Plaintiff's subjective complaints of severe, disabling back pain, annual medical evaluations likely fall outside the bounds of "accepted medical practice for the type of treatment and/or evaluation required for [Plaintiff's] medical condition(s)." 20 C.F.R. §§ 404.1502, 416.902. As such, Plaintiff likely did not have an "ongoing treatment relationship"

17

1  with Dr. Schilling, and Dr. Schilling was not a treating source.[7]
2  In that event, his opinions were not entitled to special weight.

3       As a general matter, the Court notes that the record is
4  conspicuously void of recent evidence from any treating
5  physicians.  Plaintiff submitted evidence from his March 2008 ER
6  visit (AR 276-77), Dr. Rahman's August 6 and September 18, 2008
7  examinations (AR 203-10, 201-02), and Dr. Mulvania's September
8  2008 surgical consultation (AR 211-20), but he has not submitted
9  any treating-doctor evidence generated after the Fall 2008
10 period.  Such a large gap in treatment is suspect in light of
11 Plaintiff's statements regarding the severity of his symptoms (AR
12 35, 169, 205, 162) and the fact that Plaintiff apparently had
13 health insurance during that time (AR 258).

14      Even if Dr. Schilling did qualify as a treating source and
15 in fact regularly treated Plaintiff, the ALJ did not err.  To the
16 extent the ALJ rejected Dr. Schilling's opinion, he provided
17 specific and legitimate reasons for doing so that were supported
18 by substantial evidence.

19      The ALJ was entitled to credit Dr. Sophon's opinion over Dr.
20 Schilling's because Dr. Sophon's opinion was based upon
21 independent clinical findings and was thus substantial evidence
22 upon which the ALJ could properly rely.  See Tonapetyan, 242 F.3d
23 at 1149 (explaining that a nontreating physician's contrary
24 opinion "may constitute substantial evidence when it is

25

26      [7]     Although Dr. Schilling's March 4, 2010 report is titled
27 "Primary Treating Physician's Updated Permanent and Stationary
   Evaluation," the medical evidence of record does not establish
28 that Dr. Schilling was in fact a "treating source" for Social
   Security purposes.

consistent with other independent evidence in the record"). As
the ALJ noted, Dr. Sophon conducted a complete orthopedic
examination of Plaintiff and found that he had normal curvature
of the cervical spine, no evidence of tenderness or spasm in the
thoracic and lumbar spine, and a negative straight-leg-raising
test. (AR 20, 229-33.)

Moreover, Dr. Schilling relied on Plaintiff's subjective
complaints in preparing his March 2010 workers' compensation
report. Dr. Schilling noted that "[Plaintiff] states that his
lower back pain is significantly worse since 9/5/98" and "[t]he
patient states a severity rating of 8 on a scale of 0 to 10."
(AR 255.) Dr. Schilling noted that his findings were "[b]ased
upon . . . examination findings and the patient's subjective
complaints." (AR 260 (emphasis added).) The ALJ, however, found
Plaintiff's subjective complaints not credible, pointing to
evidence of Plaintiff's malingering. Specifically, the ALJ noted
Plaintiff's appearance at the hearing in a wheelchair; Dr.
Sophon's observation that, despite "moaning and groaning" with
every movement of his body throughout his February 2010 exam,
Plaintiff did not demonstrate any symptoms of pain when walking
out of the examination room; and Plaintiff's "conveniently"
bringing only the MRI dated March 13, 2008, to the hearing when a
June 2008 MRI showed evidence of improvement in Plaintiff's
condition. (AR 19.) As discussed more fully in section VI.B
below, the ALJ's rejection of Plaintiff's subjective testimony
was proper. Because Dr. Schilling relied partly on Plaintiff's
discredited subjective complaints, the ALJ was entitled to
disregard his opinion. See Andrews v. Shalala, 53 F.3d 1035,

1043 (9th Cir. 1995) ("[A]n opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted.").

The ALJ was also entitled to adopt the opinions of nonexamining physicians Drs. Loomis and Brodsky over the opinion of Dr. Schilling.  (AR 21, 246-48, 268-75); see Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("[O]pinions of non-treating or non-examining physicians may . . . serve as substantial evidence when . . . consistent with independent clinical findings or other evidence in the record.").  After reviewing Dr. Sophon's independent-examination findings, Dr. Loomis cited Plaintiff's normal and equal muscle size on each side and lack of atrophy in the legs in his opinion that Plaintiff was capable of medium work.  (AR 248.)  His opinion was consistent with Dr. Sophon's finding that Petitioner could lift 50 pounds occasionally and 25 pounds frequently.  (AR 233.)  Upon reviewing Dr. Sophon's and Dr. Schilling's 2010 clinical reports, however, Dr. Brodsky opined that Plaintiff was capable of performing only light work.  (AR 273-75.)  This finding was consistent with Dr. Schilling's updated report, which noted that Petitioner had a "50% whole person impairment."  (AR 266.)  In any event, any conflict in the properly supported medical opinion evidence was the "sole province of the ALJ to resolve." Andrews, 53 F.3d at 1041.  Indeed, the ALJ gave Plaintiff the benefit of the doubt in concluding that he was capable of light work rather than adopting Drs. Sophon's and Loomis's findings that he could perform medium work.

The ALJ also was entitled to reject Dr. Schilling's "whole
person" rating to the extent it was a conclusion about
Plaintiff's disability for workers' compensation purposes.
Initially, the ALJ correctly noted that the "whole person"
finding was "not determinative." (AR 21.) Although the ALJ may
have overstated the matter by then noting that it was not
"relevant" (id.), it is important to distinguish those portions
of Dr. Schilling's assessment that represent medical findings
from those that represent conclusions regarding Plaintiff's
disability. See Coria v. Heckler, 750 F.2d 245, 247-48 (3d Cir.
1984) (explaining that because of differences in the definition
of "disability" in the state workers' compensation and Social
Security contexts, "the ALJ could reasonably disregard so much of
the physicians' reports as set forth their conclusions as to
[plaintiff's] disability for workers' compensation purposes," but
objective medical evidence in reports elicited for workers'
compensation should be evaluated by the same standards as medical
evidence in Social Security reports). The ALJ was entitled to
disregard Dr. Schilling's "50% whole person impairment"
determination because it was an opinion regarding Plaintiff's
ultimate disability status, which the ALJ was not obligated to
accept. See 20 C.F.R. §§ 404.1527(d)(1) ("A statement by a
medical source that you are 'disabled' or 'unable to work' does
not mean that we will determine that you are disabled."),
416.927(d)(1) (same); SSR 96-5p, 1996 WL 374183, at *5
(explaining that treating-source opinions that a person is
disabled or unable to work "can never be entitled to controlling
weight or given special significance"). Although the ALJ found

21

Dr. Schilling's "50% whole person impairment" rating not "relevant," he elsewhere noted that it was simply "not determinative" and expressly stated that "[t]he objective clinical and diagnostic evidence used by the claimant's physician in his workers' compensation case has been considered." (AR 20-21.)  Thus, the ALJ properly evaluated Dr. Schilling's medical opinions just as he would evaluate any other medical opinion. See Booth, 181 F. Supp. 2d at 1105.

To the extent the ALJ discounted the medical findings in Dr. Schilling's report, he gave "specific and legitimate" reasons for doing so.  Specifically, he noted the following: (1) Dr. Sophon's findings that Plaintiff was able to ambulate without any assistive device and did not demonstrate any symptoms of pain when walking out of the examination room; (2) Plaintiff's exhibition of a normal gait without a cane during Dr. Sophon's orthopedic examination; and (3) Plaintiff's exhibition of normal straight-leg-raising tests and motor strength, no tenderness or spasm, and no muscle atrophy in the thighs, calves, or arms. (AR 19.)

As to Plaintiff's contention that the ALJ erred by failing to mention Dr. Rahman's findings (J. Stip. at 9), this argument is unpersuasive.  The ALJ extensively referenced Dr. Rahman's examinations in his opinion, noting Dr. Rahman's findings that Plaintiff exhibited a limp; used a cane; had loss of flexion and extension, tenderness, and spasm; and tested positive for straight-leg raising and motor weakness. (AR 20.)  Nothing in the ALJ's decision suggests that he selectively analyzed the medical evidence, and the ALJ was not required to discuss every

1    piece of evidence in the record.   See Howard, 341 F.3d at 1012.

2    It is apparent that Dr. Rahman's medical findings were duly

3    considered.

4              3.   The ALJ properly assessed the findings of the

5                   consultative examiner

6         Plaintiff contends that the ALJ erred in adopting any

7    findings from Dr. Sophon's "inherently defective" report because

8    Dr. Sophon "failed to review any medical evidence of record prior

9    to rendering his assessment" and "took no radiological studies of

10   this Plaintiff's spine before rendering his ridiculous opinion."

11   (J. Stip. at 19.)   Plaintiff does not, however, cite any case law

12   to support his contention that an examiner must review prior

13   medical evidence or take radiological studies to perform a proper

14   consultative examination.   The ALJ did not err in adopting Dr.

15   Sophon's findings because they were based upon independent,

16   objective clinical results.

17             a.   *Applicable law*

18        An ALJ must "evaluate the degree to which [medical] opinions

19   consider all of the pertinent evidence in [a claimant's] claim,

20   including opinions of treating and other examining sources."   20

21   C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).   The more relevant

22   evidence that a medical source presents to support his opinion,

23   "particularly medical signs and laboratory findings," the greater

24   weight an ALJ will give that opinion.   Id.   Nevertheless, a

25   nontreating physician's opinion alone constitutes "substantial

26   evidence" to the extent it rests on objective clinical tests.

27   Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1997); Tonapetyan,

28   242 F.3d at 1149.

                              23

1                    b.   *Discussion*

2          Although Dr. Sophon did not review other medical evidence of

3     record or perform radiological studies of Plaintiff, his medical

4     opinions nevertheless rested upon objective clinical tests.  Dr.

5     Sophon performed a complete orthopedic evaluation of Plaintiff.

6     (AR 229-33.)  As part of this evaluation, Dr. Sophon noted that

7     Plaintiff's cervical spine "reveal[ed] normal curvature, no

8     deformity or asymmetry," and that Plaintiff's thoracic and lumbar

9     spine "reveal[ed] no evidence of tenderness or muscle spasm."

10    (AR 231.)  Plaintiff's lower body exhibited range of motion

11    "within normal limits," with "no evidence of muscle atrophy or

12    spasm."  (AR 232.)  Dr. Sophon further noted that Plaintiff

13    exhibited negative straight-leg-raising results both sitting and

14    supine and that despite "moaning and groaning" with every

15    movement of his body during the examination, Plaintiff did not

16    demonstrate any symptoms of pain when walking out of the

17    examination room.  (AR 231.)  Dr. Sophon's consultative report

18    was not "defective" but rather rested upon independent clinical

19    findings and thus constituted "substantial evidence."  See

20    Tonapetyan, 242 F.3d at 1149.  Accordingly, the ALJ did not err

21    in referencing Dr. Sophon's report.

22          B.   The ALJ Properly Assessed Plaintiff's Credibility

23          Plaintiff argues that the ALJ (1) "clearly failed to cite

24    any 'clear and convincing' reasons to reject Plaintiff's

25    subjective statements regarding his limitations" and (2)

26    misstated the record in stating that the June 2008 MRI "showed

27    much less in the way of abnormal findings." (J. Stip. at 7-8,

28    21.)  The ALJ did cite clear and convincing reasons for rejecting

                                  24

Plaintiff's subjective statements regarding pain and his degree
of limitation, and in any event, the ALJ cited affirmative
evidence of malingering, thereby lowering the standard for
rejecting Plaintiff's subjective statements below that of "clear
and convincing evidence."  Moreover, the June 2008 MRI apparently
did show some evidence of improvement in Plaintiff's condition,
but even if it did not, any error the ALJ made in referring to it
was harmless.

### 1.   Applicable law

An ALJ's assessment of a claimant's credibility and pain
severity is entitled to "great weight."  See Weetman v. Sullivan,
877 F.2d 20, 22 (9th Cir. 1989).  "[T]he ALJ is not required to
believe every allegation of disabling pain, or else disability
benefits would be available for the asking, a result plainly
contrary to 42 U.S.C. § 423(d)(5)(A)."  Molina v. Astrue, 674
F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks
omitted).  In evaluating a claimant's subjective symptom
testimony, the ALJ engages in a two-step analysis.  See
Lingenfelter, 504 F.3d at 1035-36.  "First, the ALJ must
determine whether the claimant has presented objective medical
evidence of an underlying impairment [that] could reasonably be
expected to produce the pain or other symptoms alleged."  Id. at
1036 (internal quotation marks omitted).  If such objective
medical evidence exists, the ALJ may not reject a claimant's
testimony "simply because there is no showing that the impairment
can reasonably produce the degree of symptom alleged."  Smolen v.
Chater, 80 F.3d 1273, 1282 (9th Cir. 2011) (emphasis in
original).  When the ALJ finds a claimant's subjective complaints

not credible, the ALJ must make specific findings that support the conclusion.  <u>See</u> <u>Berry v. Astrue</u>, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent affirmative evidence of malingering, those findings must provide "clear and convincing" reasons for rejecting the claimant's testimony.  <u>Lester</u>, 81 F.3d at 834.  If evidence of malingering exists, however, the ALJ may reject the claimant's symptom testimony by stating why the testimony is unpersuasive.  <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006).  "In making a credibility determination, the ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints . . . ."  <u>Id.</u> (internal quotation marks omitted).  In determining credibility, an ALJ "may engage in ordinary techniques of credibility evaluation."   <u>Burch v. Barnhart</u>, 400 F.3d 676, 680 (9th Cir. 2005).  "[Q]uestions of credibility and resolutions of conflicts in the testimony are functions solely of the [ALJ]."  <u>Greger</u>, 464 F.3d at 972.  If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing."  <u>Thomas</u>, 278 F.3d at 959.

    2.  <u>Background</u>

    Plaintiff complained of back pain so severe that it interfered with daily activities such as bathing, shaving, dressing, and preparing meals.  (AR 169, 205, 162.)  He claimed that his pain had increased in severity after his initial injury, with worsening pain symptoms around December 30, 2009, and again in March 2010.  (AR 183, 191.)  At his hearing before the ALJ, Plaintiff appeared in a wheelchair and complained of intense pain from sitting for a prolonged period in his chair.  (AR 44, 36.)

Plaintiff described a typical day:

> I just get up and lay down, put my feet where they're
> reclined up.  Sometimes I'll make it to the living room
> and I have a recliner in there.  Put my feet up on the
> recliner.  My wife will get me something, come and feed
> me something.  The rest of the family will help me.

(AR 35.)

During his examination with Dr. Sophon, Plaintiff "report[ed] constant sharp, burning pain in the low back" and stated that this pain was "made worse with prolonged sitting, standing, walking, bending, and lifting." (AR 229.) Dr. Sophon noted that Plaintiff "was constantly moaning and groaning, stating aggravation of pain in every movement of his body." (AR 231.) During his March 2010 workers' compensation assessment, Plaintiff complained of constant pain with a severity level of 8 on a scale from 0 to 10.  (AR 255.) He further complained of difficulty sleeping at night because of pain and weakness in both legs that made it difficult to walk without a cane or walker. (Id.) Plaintiff stated that he stopped working in March 2008 and that he was still unable to work because of his condition.  (AR 137.)

### 3.   Discussion

In his decision, the ALJ found that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity

27

assessment."  (AR 19.)  In support of this determination, the ALJ cited (1) Dr. Sophon's observations that Plaintiff was able to ambulate without any assistive device, demonstrated a normal gait without a cane, and did not show symptoms of pain while walking out of the examination room, contrary to Plaintiff's presentation in the examination room, where Plaintiff was "constantly moaning and groaning and complaining of pain"; (2) Plaintiff's refusal of recommended epidural steroid injections; (3) Plaintiff's presentation at the hearing in a wheelchair with "no objective basis in file for any assistive device"; (4) Dr. Sophon's observations that Plaintiff's back did not exhibit tenderness or muscle spasm and that Plaintiff showed normal motor strength and reflexes with no atrophy of the thighs, calves, or arms; and (5) Plaintiff's bringing a copy of the MRI dated April 13, 2008, to the hearing but "conveniently" not bringing a copy of the June 2008 MRI, which "showed much less in the way of abnormal findings."  (AR 19.)  Because Dr. Sophon's observations constituted affirmative evidence of malingering by Plaintiff, the ALJ did not need to provide clear and convincing reasons for rejecting Plaintiff's claims.  Even absent affirmative evidence of malingering, however, the ALJ's articulated reasons for rejecting Plaintiff's testimony were in fact clear and convincing.

First, Dr. Sophon's observations that Plaintiff could ambulate without any assistive device, demonstrated no symptoms of pain when walking out of the examination room, and demonstrated a normal gait without a cane constituted affirmative evidence of malingering.  During Dr. Sophon's February 2, 2010

28

examination, Plaintiff "was constantly moaning and groaning, stating aggravation of pain in the low back in every movement of his body, especially when he was taking his coat off for the examination." (AR 231.) When leaving the examination room, however, "[h]e was noted not to demonstrate any symptoms of pain." (Id.) Moreover, although Plaintiff presented at his appointment with a cane, he demonstrated a normal gait without using it. (Id.) These observations by the consultative examiner undermined Plaintiff's claims that his daily activities were limited and that he required a cane and wheelchair. They also provided affirmative evidence of malingering, lowering the standard that the ALJ had to meet to reject Plaintiff's testimony.[8]  See Greger, 464 F.3d at 972 (explaining that when evidence of malingering is present, an ALJ may reject a claimant's symptom testimony by making a credibility determination and stating why the testimony is not persuasive); cf. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 2009) ("Without affirmative evidence showing that the claimant is malingering, the [ALJ's] reasons for rejecting the claimant's testimony must be clear and convincing."). Therefore, to the extent Dr. Sophon's observations constituted evidence of malingering, the ALJ did not err. Even if these observations did not constitute evidence of malingering, they provided "clear and convincing" reasons to reject Plaintiff's testimony (as did the

---

[8]    In addition, state-agency physician Dr. S. Brodsky noted during his August 13, 2010 assessment that Plaintiff's allegations were not wholly credible because "the severity of the alleged impairments [was] disproportionate to that supported by the objective medical findings." (AR 273.)

ALJ's other articulated bases for rejecting Plaintiff's testimony).

Second, the ALJ was entitled to discount Plaintiff's credibility on account of Plaintiff's refusal of recommended epidural injections.  The ALJ, in rejecting Plaintiff's subjective statements regarding his levels of pain and impairment, noted that Plaintiff's refusal of epidural injections "demonstrate[d] a possible unwillingness to do what was necessary to improve his condition" and "may also be an indication that his symptoms were not as severe as purported."  (Id.)  Moreover, Plaintiff also refused to take several recommended oral medications (AR 41-42, 201), further undermining his subjective complaints.  Plaintiff stated that he did not accept injections because he wanted permanent, not temporary, relief (AR 36-37), but the ALJ was entitled to believe that if Plaintiff's symptoms were as severe as he claimed, he would have jumped at any opportunity for relief.  See Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.")

Third, Plaintiff's presentation at the hearing in a borrowed wheelchair entitled the ALJ to discount his credibility. Although Drs. Rahman, Mulvania, and Sophon all noted that Plaintiff ambulated with the aid of a cane (AR 204, 213, 231), there is no objective evidence in the record that one had ever been prescribed.  Dr. Sophon noted that Plaintiff exhibited a normal gait without the use of a cane.  (AR 231.)  A wheelchair

30

was never prescribed for Plaintiff, and Plaintiff's mother admitted at the hearing that Plaintiff had borrowed the wheelchair from his grandmother.  (AR 43-44); see Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) ("plaintiff's non-prescribed use of a wheelchair and unwarranted use of a cane" properly considered by ALJ in determining that "[Plaintiff's] subjective expression of his limitations lacked credibility").

Fourth, Dr. Sophon's report that Plaintiff's back did not exhibit tenderness or muscle spasm and that he showed normal motor strength and reflexes, with no atrophy of the thighs, calves, or arms, suggested that Plaintiff's condition had largely improved since March 2008, as doctors had predicted soon after his injury would happen (AR 204), contrary to Plaintiff's contention that his symptoms worsened (AR 183, 191).  At the consultative examination, Plaintiff demonstrated motor strength within normal limits, at 5/5, and did not demonstrate any neurological deficits besides diminished sensation in the lower left extremity.  (AR 232.)  Plaintiff appeared sufficiently robust for Dr. Sophon to opine that Plaintiff was capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently, although he would be restricted to sitting, standing, or walking for six hours each in an eight-hour day.  (AR 233.) This medical evidence constituted a legally sufficient reason to reject Plaintiff's subjective statements of disabling pain, and the Court "may not engage in second-guessing" of this finding. (AR 19); Thomas, 278 F.3d at 959.

Finally, the ALJ cited as a reason for discrediting Plaintiff's testimony the fact that Plaintiff brought to the hearing the MRI dated March 13, 2008, but "conveniently" did not

31

bring "a second MRI performed three months later that showed much less in the way of abnormal findings." (AR 19.)  Although this second MRI is not included in the record, it was described by Dr. Schilling as showing a "4mm central disc protrusion with mild spondylosis." (AR 259.)  By contrast, the MRI dated March 13, 2008, showed "L3-4: 1-2 mm bulge stenosis" and "L4-5: 4-5 mm disc herniation and moderate canal stenosis." (Id.)  Although both MRI scans showed herniations/protrusions of roughly the same size – although the later one was slightly smaller – the later MRI apparently did not show a one- to two-millimeter bulge stenosis at L3-4 or any evidence of canal stenosis.  (Id.)   Although the ALJ may have overstated the matter in saying that the second MRI "showed much less in the way of abnormal findings," the second MRI apparently evidenced some improvement in Plaintiff's condition.  Plaintiff has not given any reasons for bringing only the first MRI to the administrative hearing.  Moreover, even after obtaining counsel, Plaintiff did not produce the second MRI to the Appeals Council (AR 7), which could have considered the additional evidence, see Taylor, 659 F.3d at 1233 (quoting 20 C.F.R. § 404.970(b)), and he does not contend that the ALJ failed to develop the record by not obtaining it.  In any event, as discussed herein, the ALJ gave ample other reasons for rejecting Plaintiff's subjective testimony, and thus any error he may have committed in faulting Plaintiff for failing to bring the June 2008 MRI was harmless.  See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (ALJ's error harmless when "inconsequential to the ultimate nondisability determination").

    Plaintiff's argument that the ALJ exhibited bias against him in noting that he "conveniently" did not bring the June 2008 MRI

to the hearing is incorrect.  See Rollins v. Massanari, 261 F.3d 853, 858 (9th Cir. 2001) ("'[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display' do not establish bias.") (quoting Liteky v. United States, 510 U.S. 540, 555-56, 114 S. Ct. 1147, 1157, 127 L. Ed. 2d 474 (1994)).  The ALJ's implication that Plaintiff perhaps purposefully did not submit the June 2008 MRI does not establish bias against Plaintiff but rather exhibits the ALJ's legitimate concern that Plaintiff may have been attempting to keep evidence of his improvement out of the record.  Remand on these grounds is unwarranted.

**VII. CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[9] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.


DATED: July 23, 2013

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[9]    This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."